Schulze & Co. en Liquidación *v.* Sucesión Castro.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 81.—Resuelto en Mayo 19, 1904.

Acción Reivindicatoria—Descripción é Identidad del Inmueble—Dominio del Mismo.—*En las acciones reivindicatorias no solo debe describirse é identificarse el inmueble que se reclame, sino que debe acreditarse el dominio á favor del demandante para establecer así el derecho que se invoque.*

Apelación—Sentencia.—*Si una parte no hubiere interpuesto apelación contra una sentencia, ni se hubiera adherido, en el trámite correspondiente, al recurso interpuesto por la contraria, no podrá impugnar en el Tribunal de apelación ninguno de los pronunciamientos de dicha sentencia, los que quedarán subsistentes por ministerio de la ley.*

EXPOSICIÓN DEL CASO.

En el juicio seguido en el Tribunal de Distrito de Mayagüez, entre partes, de la una los Señores Schulze y Compañía en liquidación, demandantes, y de la otra la Sucesión de Doña Asunción Castro, demandada, sobre reivindicación de terrenos, cuyo juicio pende ante Nos á virtud de recurso de casación, hoy de apelación, interpuesto por la referida sociedad contra la sentencia que pronunció aquel Tribunal, habiendo representado y defendido á la parte recurrente ante esta Corte Suprema, los Letrados Don Antonio Alvárez

Nava y Don Eduardo Acuña, sucesivamente, y á la parte recurrida el Letrado Don Pascasio Fajardo.

Resultando que la expresada sentencia copiada á la letra dice así:

"Sentencia.—En la Ciudad de Mayagüez á veintidos de Octubre de mil novecientos dos.—Visto en juicio oral y público este pleito civil seguido entre partes, de la una, los Señores Schulze y Compañía en liquidación, del domicilio de esta Ciudad, representados, en un principio por el Abogado Don Luis Campillo, más tarde por su compañero Don Ramón Roura, y últimamente por el Letrado Don José de Diego, contra la Sucesión de Doña Asunción Castro, defendida por el Letrado Don Pascasio Fajardo y Cardona, sobre reivindicación de terrenos.

1. *Resultando*: que Don Lorenzo Martínez Ohuviñas, interpuso contra los Señores Schulze y Compañía demanda de interdicto sobre recobrar la posesión, para que se le amparase de la que gozaba y había sido desposeido por los Señores Schulze y Compañía, decretándolo así el Tribunal por sentencia publicada el 24 de Noviembre de 1900, en la que se acordó que se repusiese á Martínez Ohuviñas en la posesión de la fracción de terreno comprendida entre la zanja abierta y que dió origen al interdicto y la quebrada Buena Vista, de cuya posesión había sido despojado por los Señores Schulze y Compañía, á los que se condenó al pago de las costas, daños y perjuicios, con reserva del derecho que pudieran tener sobre la propiedad ó sobre la posesión definitiva, que podrían utilizar en el juicio correspondiente.

2. *Resultando*: que en virtud de esa reserva, Schulze y Compañía dedujeron juicio declarativo contra la Sucesión de Doña Asunción Castro, esposa que fué de Don Lorenzo Martínez, exponiendo como puntos de hecho, que al cumplimentarse la sentencia de interdicto y reponerse á Don Lorenzo Martínez en la posesión del terreno de que supuso despojado, se varió por completo el punto de las colindancias de las cuatro haciendas nombradas Buena Vista, Julia, Paz y San Carlos, punto que había de reponerse en su día al sitio donde estaba, en virtud de la reivindicación que interesaban, punto que era invariable, por ser el divisorio de las cuatro haciendas referidas; que tanto ellos, ó sean Schulze y Compañía, como los primitivos dueños de la hacienda Buena Vista, hacía más de medio siglo que se hallaban en la posesión de esa finca, y por eso abrieron una zanja en terrenos correspondientes á la misma y en la colindan-

cia con la hacienda hoy de Don Lorenzo Martínez y de la Sucesión de Doña Asunción Castro, antes de los hermanos Delorisse, cuya colindancia era la del Oeste; que para dictarse la sentencia de interdicto, atendió el Tribunal únicamente á la escritura de venta otorgada por Don Leo Delorisse á favor de Don Lorenzo Martínez en 27 de Mayo de 1896, ante el Notario de esta Ciudad Don Mariano Riera Palmer, de la cuál consta que la hacienda Julia del Señor Martinez, colinda por el Saliente con la quebrada denominada Buena Vista, cuando jamás ha habido tal colindancia, como se hace constar en dicha escritura, pues siempre la colindancia por el Saliente, era con la hacienda 'Buena Vista,' de modo que esa quebrada nunca ha sido colindancia ni línea divisoria, lo cuál demostraba trayendo antecedentes y títulos, tanto de la hacienda 'Julia' como de la hacienda 'Buena Vista,' cuales eran, como de la hacienda 'Buena Vista,' los siguientes: la escritura pública otorgada en esta Ciudad ante el Escribano Don Pedro Arroyo, el 12 de Mayo de 1823, por la que Don Jaime Soler vendió á Don Miguel Agostini cuatro caballerías de tierra, sitas en el paraje denominado 'Naranjales' de esta jurisdicción, bajo los puntos y linderos que enumera, y de los que se advierte, que esas cuatro caballerías ú ochocientas cuerdas que forman hoy las haciendas 'Tres Hermanos' (á) 'Merle,' 'Plato Indio' y 'Buena Vista,' no colindan al Oeste con ninguna quebrada sino con una línea que va del punto de colindancia de varias haciendas á otro punto en el Río Casey y con este río; la otra escritura de 19 de Enero de 1832, otorgada ante el mismo Escribano Arroyo, por la que Don Miguel Agostini vendió á su hermano Don Pedro, una hacienda plantada de café, situada en el barrio de 'Casey' de esta jurisdicción, hacienda que era parte de las cuatro caballerías que hubo Don Jaime Soler, observándose que los puntos están especificados, viéndose claramente que al Sud-Oeste, se hace punto en un guaraguao con Don Zenón Delorisse, colindando con el mismo Delorisse al Oeste, en la línea divisoria que del referido punto sigue al Nordeste hasta llegar al río Casey, y se nota al pie de la escritura una certificación del anotador de hipoteca, en que se hace constar clara y terminantemente con relación á la propia hacienda, que colinda por el Poniente con la de Don Zenón Delorisse; la escritura pública de 8 de Abril de 1869 otorgada ante el Escribano Don Rafael Bello, por la que Don Pedro María Agostini vendió á sus hermanos Don Juan y Don Gerónimo todo lo que le pertenecía en la sociedad agrícola que formaron como dueños de las haciendas 'Buena Vista' y 'Juanita,' consignándose que la primera está situada en el barrio de 'Río Cañas Arriba,'

con una cabida de 200 cuerdas más ó menos, colindando al Poniente con la Sucesión de Don Zenón Delorisse; la otra escritura autorizada el mismo día 8 de Abril del mismo año, y ante el propio Escribano, por la que Don Juan y Don Gerónimo Agostini disolvieron una sociedad y quedó el último como dueño de la hacienda 'Buena Vista,' bajo las colindancias expresadas en las escrituras constantes en autos; un plano extendido por el agrimensor público Don Pedro Tolossa y á que se refiere una certificación de 29 de Enero de 1892, en la que se hace constar, que tuvo á la vista una antigua escritura de la Sociedad de la hacienda 'Buena Vista' y que la guardarraya con los Delorisse era un callejón entre las dos haciendas, que aunque no forma una línea recta de la emajagua á una piedra en la quebrada Paula, es el límite que las ha separado desde hace más de treinta años; el testamento otorgada el 23 de Noviembre de 1889 ante el Notario Don Santiago R. Palmer, por el que Doña Teresa Maristany y Trabal declaró quienes eran sus herederos y después de su fallecimiento, pasó á ellos quienes la inscribieron, la hacienda Buena Vista, á su nombre, el 25 de Septiembre de 1894, haciéndose constar en dicha inscripción que la hacienda referida con una extensión de 211 cuerdas con 80 céntimos, colinda por el Oeste con la hacienda de los hermanos Delorisse; unas diligencias de adjudicación y una escritura de 15 de Diciembre de 1898, que ponen como colindancia de la hacienda Buena Vista por el Oeste á la hacienda Julia, llamando la atención, que el año de 1874, Doña Luisa Geraut solicitó el deslinde judicial de la hacienda Julia, que se decretó, y llevó á cabo, y al llegar á la colindancia de finca de Don Jerónimo Agostini, se convino en seguir el deslinde por la colindancia aludida, tomándose como punto de partida un árbol de roble, que se halla á la vuelta del camino, hasta tocar la desembocadura de la quebrada Buena Vista en la Paula, cosa que no hubiera aceptado bajo ningún concepto la Señora Gerault, si su colindancia por el Este hubiera podido ser la quebrada Buena Vista; que la documentación de la hacienda Julia también contribuye á hacer esa afirmación, porque Doña María Sofia Simón de Sourche de Bascher, por escritura de 25 de Septiembre de 1828, ante el Escribiano Don Pedro Arroyo, vendió á los Señores Don Juan y Don Luis Zenón Delorisse, entre otras cosas, una hacienda en el sitio de Casey, colindando por el Norte y Nordeste con el río Casey y quebrada que á él se reune, hasta un punto en donde había un tocón en la quebrada Paula, lindero con Miguel Agostini, de cuyo punto parte la línea divisoria de la colindancia del Este por los terrenos del referido Agostini, ó sea la hacienda Buena Vista en direc-

ción casi recta al Sud; porque en la certificación expedida por el ano-
tador de hipoteca Don Pedro Rafael Escalona y que está vaciada en
la escritura acompañada, menciona como colindancia de la finca Julia
á Don Miguel Agostini por el Este ó Saliente, y la hacienda Buena
Vista era de este Señor; porque se promovió un expediente posesorio
en que se comprendió la hacienda Julia, y se hizo constar, que colinda
por el Saliente con el río Casey y la quebrada Buena Vista, colindan-
cia maliciosamente alterada, siendo nulo el expediente y falso, hacién-
dose declaraciones en él destituidas de base: que sabiendo Schulze
y Compañía que los linderos de la hacienda Buena Vista habían sido
alterados, hiciéronlo constar así por acta, y esos Señores vendieron
la hacienda repetida á Don Federico Carlos Nielsen, quien autorizó
á dicha sociedad, para que dedujese este pleito; que adquirida la
hacienda Julia durante la sociedad conyugal por Don Lorenzo Mar-
tínez, el litigio había de deducirse para reivindicar las tierras contra
la Sucessión de Doña Asunción Castro, por lo que y como por el acto
detentatorio realizado por Don Lorenzo Martínez, se habían causado
perjuicios de consideración á los dueños de la hacienda Buena Vista,
privándoles de cultivar el café existente en el pedazo de terreno de-
tentado, arrancando los limoneros y árboles útiles que había planta-
dos, y derribando varios puentes, así como también obligando á los
Señores Schulze y Compañía á verificar gastos y á pagar costas en el
interdicto que contra ellos estableció Martínez; habían de deducir
Schulze y Compañía este pleito, citando como puntos de su derecho
lo que se entiende por propiedad, que de ella nadie puede ser privado
sino por autoridad competente, que los frutos industriales pertenecen
al dueño, que es lo que se entiende por poseedor de mala fé, cuando
perjudican las inscripciones de posesión, que Martínez no puede ale-
gar prescripción, que el que causa un daño á otro debe indemnizarle
los perjuicios que le ha ocasionado, y que las costas se imponen al li-
tigante cuyas pretensiones sean desestimadas, y dedujo de lo expues-
to, que Don Jaime Soler vendió á Don Miguel Agostini, por escritura
de 12 de Mayo de 1823, ochocientas cuerdas de tierra sitas en el
paraje nombrado Naranjales con cuyas cuerdas se formaron cuatro
haciendas nombradas "Tres Hermanos," "Merle," "Plato Indio,"
y "Buena Vista;" que en 25 de Septiembre de 1828, Doña María
Simona Soucher de Bascher, vendió á Don Juan Grippe y á Don
Luis Zenón Delorisse, entre otras cosas, una hacienda de café nom-
brada sitio de Casey, colindando por el Saliente con Don Miguel
Agostini, dueño todavía de las ochocientas cuerdas: que en 19 de
Enero de 1832, Don Miguel Agostini de las ochocientas cuerdas, ven-

dió á su hermano Don Pedro Agostini, una hacienda plantada de café en el barrio de Casey, colindando por el Poniente con la hacienda de Don Simón Delorisse, que colindaba con Don Miguel Agostini por el Este, y la Buena Vista colindaba por el Oeste con la Julia: que la tan referida hacienda Buena Vista ha conservado siempre ese linde, mientras que la de la hacienda Julia le fué alterado en el expediente posesorio, promovido, el año 1892, poniéndole la quebrada Buena Vista en lugar de la hacienda Buena Vista, con objeto de introducirse en los terrenos de esta última hacienda: por todo lo cuál solicitaban los Señores Schulze y Compañía que se dictase sentencia declarando que Don Federico Carlos Nielsen es dueño del pedazo de terreno comprendido entre la zanja abierta por orden de los Señores actores y la quebrada Buena Vista y del cuál terreno se dió posesión á Don Lorenzo Martínez Ohuviñas, en virtud del interdicto de referencia, condenando á la Sucesión demandada á la entrega de esos bienes con los frutos producidos y debidos producir, desde que fueron detentados por Martínez, á la indemnización de los perjuicios causados con el acto detentatorio, entre los cuáles se entienden comprendidos los gastos y costas pagados por los Señores Schulze y Compañía en el interdicto de referencia, y al abono de todas las costas de este pleito.

3. *Resultando* : que la Sucesión de Doña Asunción Castro se opuso á la demanda, exponiendo como hechos, que aceptaba que los Señores Schulze y Compañía estuvieran en plena propiedad de la hacienda Buena Vista, desde hace más de medio siglo, pero negaba que al abrir la zanja en terrenos de la hacienda Julia ejercieran un acto de dominio, como lo demostraba la sentencia dictada en el interdicto y la posesión decretada por el Tribunal, siendo inexacto que se variaran los puntos de las colindancias de las cuatro haciendas nombradas Buenas Vista, Julia, Paz y San Carlos, al cumplimentarse la sentencia mencionada; que la hacienda Julia ha colindado siempre por el Este con una quebrada á la que se designó más tarde como es costumbre en los campos, con nombres, llamándosele Buena Vista, y esa afirmación se comprobaba con las mismas escrituras presentadas por Schulze y Compañía, en que ya no sólo se designaba con dicho nombre, sino que también se expresaba el de otra quebrada denominada Paula, sitio en que desemboca la primera y desde cuyo punto es desde donde parte la zanja y no desde la quebrada Buena Vista, como se indica maliciosamente en el escrito de demanda; que la escritura acompañada con el número 1 por los actores, determinaba la colindancia al Oeste, partiendo desde el punto de cuatro haciendas

el que era más favorable á los demandados, y de dicho punto al Oeste colindaba con terrenos que se hallaban á orillas del río Casey, demostrándose con esto, que la colindancia al Oeste era con terrenos vendidos posteriormente á Juan José Simón de Souchet y á Musiet Denoir, vendida la primera porción á Juan y Zenón Delorisse y más tarde vendida por Don Leo Delorisse á Don Lorenzo Martínez la finca Julia, tenía como límite una quebrada que no puede ser otra que la conocida con el nombre de Buena Vista, afirmación que se acreditaba con una escritura acompañada por Schulze y Compañía de fecha 25 de Septiembre de 1828 y en ella se vé claramente que la colindancia al Este, no es la que expresa maliciosamente la sociedad Schulze y Compañía que ha cambiado por completo los linderos de su escritura; que por otra escritura de 19 de Enero de 1832, se fijan otras colindancias y después de examinar otros títulos producidos y de alegar como puntos de derecho varias sentencias del Supremo y varios artículos del Código Civil y de la Ley Hipotecaria, terminó solicitando que se dictase sentencia declarando sin lugar la demanda y sin lugar á la restitución del terreno que se pedía con las costas á Schulze y Compañía.

4. *Resultando*: que señalado día para la prueba, los demandantes solicitaron el cotejo de las escrituras acompañadas con la demanda, cuales son: 1°. la de 12 de Mayo de 1823, por la que Don Jaime Soler vendió á Don Miguel Agostini cuatro caballerías de tierra ante el Escribano Don Pedro Arroyo; 2. la de 19 de Enero de 1832, por la que Don Miguel Agostini vendió á su hermano Don Pedro una hacienda de café ante el propio Escribano Arroyo; 3. el testamento otorgado por Don Pedro Agostini en siete de Diciembre de 1853 y el testamento otorgado ante Don Santiago R. Palmer por Doña Teresa Maristany y Trabal de Agostini en 22 de Septiembre de 1889; 4, la escritura de venta de condominio otorgada en 15 de Septiembre de 1898 por Don Gerónimo Agostini á los Señores Schulze y Compañía ante el Notario Don Mariano Riera Palmer; 5, la escritura número 458 de tres de Noviembre de 1874 ó sea el testimonio expedido en dos de Marzo de 1880 ante el Notario Don Pedro María Martínez y Rivas; 6. la escritura de 25 de Septiembre de 1828, ante Don Pedro Arroyo, por la que Doña María Ana Sofía Simond de Souchet, vendió á Don J. Grigg y Don Luis Zenón Delorisse, entre otras propiedades una hacienda en el sitio de Casey; 7. el acta de requerimiento de dos de Mayo de 1901 autorizada por el mismo Notario Don Mariano Riera á instancia de los Señores Schulze & Compañía; 8. La escritura de venta otorgada en 18 de Diciembre de 1900

por los Señores Schulze y Compañía á favor de Don Carlos Federico Nielsen, ante el Notario Don Mariano Riera; y adicionaron y presentaron las siguientes escrituras; una de 18 de Junio de 1834, otorgada ante el Escribano Don José Antonio Rivas, por la que Don Miguel Agostini vendió 36 cuerdas á Don Simón Mezes; otra de 25 de Junio de 1834, ante el propio Escribano Rivas, por la que Don Simón Mezes vendió á Don Luis Diendoné las indicadas 36 cuerdas de tierra; otra de 11 de Mayo de 1840 ante el propio Escribano Rivas, hecha por Don Francisco Mitil Diendoné á Juan Basora y Co.; otra de 17 de Junio de 1847 ante el Escribano Don Eugenio de Hostos, por la que Juan Basora y Compañía vendieron una finca rústica á Don Agustín Hardoin; otra de 30 de Junio de 1851, ante el Escribano Don Pedro Arroyo, por la que Don Agustín Hardoin vendió la misma finca á Doña Ana Rosa de Ferrer; otra de 28 Julio de 1856 ante el Escribano Interino Don José Ramón Cesteros, por la cual Doña Ana Rosa de Ferrer vendió 36 cuerdas de tierras á Don Juan Federico de Hardoin; otra de 30 de Enero de 1857 ante Don Eugenio de Hostos, por la que Don Juan Bautista Federico Hardoin vendió las mismas 36 cuerdas de tierra á Don Pedro Agostini; otra de 21 de Abril de 1825 ante Don Pedro Arroyo, por la que Don Pedro Agostini vendió un lote de tierra de 150 cuerdas á Don Santiago Bayron; otra de 15 de Julio de 1825 ante el mismo escribano Arroyo por la que Don Santiago Bayron retrovendió la misma finca de 150 cuerdas á Don Pedro Agostini; otra de 22 de Abril de 1845 ante Don Eugenio Hostos, por la que Don Pedro Agostini vendió dichos terrenos á su hermano Don Miguel Agostini; y otra de 12 de Mayo de 1823 ante Don Pedro Arroyo por la que Don Jaime Soler vendió una finca rústica á Don Elías Horteaux; y otra escritura de sociedad otorgada por Don Miguel, Don Pedro y Don Gerónimo Agostini, otorgada en 4 de Febrero de 1825 ante el Escribano Don Pedro Arroyo, solicitando varias certificaciones de la Secretaría, interesando un cotejo de la escritura número 39 otorgada por Schulze y Compañía en liquidación y Don Carlos Federico Nielsen, acompañándose además una certificación del Registrador de la Propiedad, y solicitando á su vez la prueba de reconocimiento judicial é inspección ocular, acompañando lista de testigos que habían de declarar en el juicio oral.

5.  *Resultando*: que la Sucesión de Doña Asunción Castro, acompañó como prueba una escritura otorgada ante el Escribano que fué de esta Ciudad Don Eugenio de Hostos, por la que la Sucesión de Don Pedro Agostini compró á Don Juan Bautista Federico Hardoin en 30 de Enero de 1857, una parcela de terreno de 36 cuerdas, cons-

tando de la escritura queAgostini  adquiría dicho terreno con colindancia del Sr. Delorisse, agua por guardarraya ó sea la quebrada nombrada hoy Paula, siguiendo esta quebrada que se une con la Buena Vista, y remontando á la quebradita por parte de los establecimientos que eran de Agostini, en donde está la piedra chata que hace mención la escritura referida,  interesó que el Notario. Riera Palmer librara certificación relación por la que ante Don Pedro Arroyo Don Jaime Soler vendió á Don Elías Horteaux una estancia que poseía en el lugar denominado Naranjales, expresándose las colindancias y otra certificación literal de la escritura fecha 17 de Marzo de 1825 ante Don Eugenio de Hostos, por la que Don Elías Horteaux vendió á Don Juan José Souche una estancia sita en el paraje. nombrado Naranjales, cuya porción formaba parte de la adquisición de Horteaux á Don Jaime Soler; otra certificación solicitada al propio Notario Riera sobre venta de terreno á Don Nicolás Maduro el 21 de Abril de 1826: otra certificación del mismo Notario Riera expresiva de que Don Francisco Mitil Diendoné vendió á Juan Basora y Compañía 100 cuerdas de terreno, con especificación de las colindancias del Sud y el Este: otra certificación con vista de una escritura otorgada el 17 de Junio de 1847 ante el Escribano Hostos, expresiva de que Juan Basora y Compañía vendió á Don Agustín Hardoin 200 cuerdas de terreno en el barrio de Furnias, con expresión de las colindancias: otra certificación del mismo Notario para que con vista de la escritura de 30 de Junio de 1851 ante el mismo Escribano Hostos, expresase si Don Agustín Hardoin vendió á Doña Rosa de Ferrer una finca; instó que se trajera la escritura obrante en el protocolo de 28 de Junio de 1856, por la que Doña Rosa de Ferrier vendió á Don Juan Bautista Federico Hardoin un pedazo de terreno sito en el barrio de Furnias, y otro testimonio de escritura de 19 de Octubre de 1843, obrante en el protocolo del Sr. Hostos, que custodia el Sr. Riera Palmer, sobre constitución de una fianza; y por el Secretario se trajera á este expediente certificación, ciertas constancias del pleito de interdicto promovido por Don Lorenzo Martínez contra Schulze y Compañía, se adhirió á la prueba de reconocimiento judicial pedido por los. actores y citó ó designó testigos para que declarasen en las sesiones del juicio.

6.  *Resultando*: que éste tuvo efecto el día 25 del pasado Septiembre durante varias sesiones, en las que se practicó extensa prueba é informaron los Letrados lo que á su derecho convino y se señaló día para la votación de la sentencia que recayó por unanimidad en el día de hoy.

7. *Resultando*: que en el presente pleito se han cumplido todas las prescripciones legales.

Visto, siendo Juez Instructor el Sr. Presidente del Tribunal Don Arturo Aponte Rodríguez.

1. *Considerando*: que deducido el juicio sumarísimo de interdicto por Don Lorenzo Martínez contra Señores Schulze y Compañía para que le restituyeran estos en la posesión de una fracción de terreno de que había sido despojado, á consecuencia de haber abierto aquellos una zanja que le privaba del derecho á las tierras comprendidas desde el sitio en que fuera abierta hasta la quebrada "Buena Vista," y declarada con lugar la demanda, quedaron por esa declaratoria constituídos los demandantes en el deber de justificar el dominio y la posesión que sobre dicha fracción de terreno pudieran tener, con exclusión de Martínez, ó de la Sucesión de Doña Asunción Castro, como en estos autos se ha consentido y debatido.

2. *Considerando*: que las escrituras aportadas á este pleito, no pocas en número por cierto, lejos de determinar por modo preciso, como lo exige la Ley, que Schulze y Compañía son dueños de la fracción comprendida entre la zanja que ellos abrieron y la quebrada "Buena Vista," y que motivó el interdicto de recobrar la posesión, establecen una confusión de fincas vecinas que imposibilita hacer un pronunciamiento favorable al ejercicio de la acción de dominio, porque no existe una prueba clara y evidente que demuestre el verdadero punto divisorio de las haciendas Buena Vista y Julia, y por lo tanto, que justifique la identidad de lo porción de terreno reclamada.

3. *Considerando*: que cuando se solicita la reivindicación de un inmueble, no sólo ha de precisarse con exactitud, sinó también acreditarse en juicio su dominio, para asegurar desde luego, sin dudas de ningún género, que es indiscutible el derecho que se invoca.

4. *Considerando*: que de ninguna de las escrituras constantes en el pleito, ni de las certificaciones traidas al mismo, ni del reconocimiento judicial, ni de las declaraciones testificales recibidas, ni de toda la prueba en conjunto, puede deducirse que los Señores Schulze y Compañía han acreditado el dominio ni la posesión que pretenden.

Vistas las sentencias del Tribunal Supremo de nuestro pais de 24 de Octubre de 1900 y 10 de Mayo de 1903.

*Fallamos*: que debemos declarar y declaramos sin lugar la demanda, y en su consecuencia, absolvemos de ella á la Sucesión de Doña Asunción Castro, compuesta del viudo Don Lorenzo Martínez Ohuviñas y de sus hijos legítimos Doña Ofelia, Da. Aracelia, Don

Rogelio, Da. Ernestina y Don Augusto Martínez Castro, sin expresa condenación de costas. Así por esta nuestra sentencia lo pronunciamos, mandamos y firmamos.''

*Resultando* que contra la anterior sentencia interpuso la representación de Schulze y Compañía, recurso de casación que le fué admitido, y elevados los autos á esta Corte Suprema, previa citación y emplazamiento de las partes, se sustanció dicho recurso como de apelación, evacuando ambas partes el trámite de instrucción y señalándose día para la vista, que tuvo lugar con asistencia de sus respectivos Letrados.

Abogados del apelante:    *Sres. Alvárez Nava* y *Acuña (Eduardo).*

Abogado del apelado: *Sr. Fajardo.*

El Juez Asociado Sr. Hernández, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

*Considerando* que contra la sentencia de la Corte de Distrito de Mayagüez en cuanto dispone se entiendan las costas sin expresa condenación, no ha interpuesto recurso de apelación la Sucesión demandada, ni tampoco sobre ese extremo se ha adherido al interpuesto por los demandantes, debiendo en su consecuencia quedar subsistente aquél pronunciamiento, por Ministerio de la Ley.

*Vistos* los artículos 358 y 371 de la Ley de Enjuiciamiento Civil.

*Fallamos* que debemos confirmar y confirmamos la sentencia que dictó la Corte de Distrito de Mayagüez en veinte y dos de Octubre de mil novecientos dos, con las costas del recurso á cargo de la parte apelante; y devuélvanse los autos á dicha Corte con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Figueras, Sulzbacher y MacLeary.